815 So.2d 759 (2002)
Julie SOSNICK, as Personal Representative of the Estate of Leonard Cyrulnik, Appellant,
v.
Danette McMANUS, Appellee.
No. 4D01-2031.
District Court of Appeal of Florida, Fourth District.
May 8, 2002.
*760 Daniel S. Mandel and Debra M. Cohen of Mandel, Weisman & Brodie, P.A., Boca Raton, for appellant.
Daniel M. Landis of Tedesco & Landis, P.A., Boca Raton, for appellee.
HAZOURI, J.
Appellant, Julie Sosnick, as personal representative of the Estate of Leonard Cyrulnik, timely appeals from the order granting appellee, Danette McManus's, Motion to Enforce a Proposal for Settlement. We reverse.
On February 18, 2000, appellee filed an action against appellant for replevin of personal property allegedly valued at approximately $50,000 and in the possession of appellant's decedent at the time of his death. The complaint also included a count for conversion of the same property. Appellant answered the complaint and filed a permissive counterclaim for a declaratory judgment as to whether appellee was responsible for estate taxes upon the proceeds of a $500,000 life insurance policy that appellee received as the decedent's beneficiary. Appellee answered the counterclaim and asserted her affirmative defenses.
On January 29, 2001, appellant made a Proposal for Settlement which stated:
Defendant, Julie Sosnick, the Personal Representative of the Estate of Leonard Cyrulnik, by an [sic] through their under [sic] undersigned counsel, and pursuant to Rule 1.442 of the Florida Rules of Civil Procedure, and Florida Statute 768.79 hereby offers Plaintiff, Danette McManus, to settle this action for the total sum of TWO THOUSAND FIVE HUNDRED ($2500) DOLLARS, inclusive of costs and attorney's fees, and contingent upon the Plaintiff's execution of a Release and Settlement in favor of Defendant, as full and complete settlement of all claims.
On February 21, 2001, appellee responded to the proposal with Plaintiff's Acceptance of Proposal for Settlement which stated:
PLAINTIFF shall accept from DEFENDANT, JULIE SOSNICK, as Personal Representative of the ESTATE OF LEONARD CYRULNIK, the total amount of $2,500.00, inclusive of costs and attorneys' fees, to settle all claims in connection with this action upon PLAINTIFF's execution of a Release and Settlement Agreement, in accordance with her Proposal for Settlement dated January 25, 2001.
Appellant then sent a copy of the Settlement Agreement and Release which she proposed. The settlement documents did not contain a provision for the inclusion of the settlement of appellant's counterclaim. Appellee's counsel sent a letter to appellant's counsel advising him that the settlement documents were unacceptable because appellee's acceptance of the proposal included the settlement of all claims including the counterclaim.
Appellant's counsel responded in a letter stating that it was not the intent of appellant to include the counterclaim but only *761 appellee's claim. He stated, "If you are of the opinion that there was no meeting of the minds in accepting the proposal since it relates to the main claim only, then please so advise. We will not hold you to your acceptance in the event you want to withdraw same."
Appellee then filed Plaintiff's Motion to Enforce Proposal for Settlement asserting that there had been an offer by appellant to settle all claims and that it had been accepted and, therefore, the settlement should be enforced. The attorney for appellant responded to the motion with a verified response[1] and memorandum, along with an affidavit of appellant in which she stated in pertinent part:
3. I have never given my attorney authority to settle the counterclaim in this action. Rather, it is my understanding that the estate has a legitimate claim in excess of $100,000.00 which represents the tax liability for an insurance policy on the life of Leonard Cyrulnik for which the beneficiary is the Plaintiff. At the time the policy was taken out, the Plaintiff and Leonard Cyrulnik were engaged. Subsequently they broke up and were living apart. Prior to Mr. Cyrulnik's death, however, he did not effectuate a change of beneficiary on this policy.
4. Even though there was no familial relationship between Leonard Cyrulnik and the Plaintiff, the Plaintiff was able to collect $500,000 on an insurance policy. The counterclaim legitimately seeks the payment of an allocation as to the tax liability related to the insurance benefits.
5. I have given my attorneys authority to settle the main claim for the total sum of $2,500.00.
A hearing was held on appellee's Motion to Enforce a Settlement at which appellee asserted that she unconditionally accepted appellant's $2,500 proposal for settlement of all claims. Appellee argued that the lack of a specific reference to appellant's counterclaim did not affect the enforceability of the agreement to settle all claims. She cited for authority Security Professionals, Inc. By and Through Paikin v. Segall, 685 So.2d 1381 (Fla. 4th DCA 1997), and MGR Equipment Corp., v. Wilson Ice Enterprises, 731 So.2d 1262 (Fla. 1999). Both Security Professionals and MGR hold that a proposal for settlement made pursuant to Rule 1.442 and section 768.79 which includes language settling "all claims" is sufficiently specific to include counterclaims. Therefore, the appellees asserted the acceptance of the proposal made by the appellant was sufficient to constitute a binding settlement of all claims. The trial court agreed and held:
[T]here was an enforceable contract. There was an offer made and an acceptance. The offer related to all claims and the acceptance was for all claims. Accordingly, the Court finds based on the case of Security Professionals, [Inc. By and Through Paikin] v. [Segall], 685 So.2d 1381 (Fla. 4th DCA 1997)[sic] and MGR Equipment Corp. v. Wilson [Ice Enterprises], 731 So.2d 1262 (Fla.1999), that the offer was for all claims and the acceptance was for all claims and as such, includes counterclaims.
Appellant asserts in this appeal that Security Professionals and MGR are not controlling and the facts of the instant case are distinguishable. Appellant argues that the distinguishing facts are that the express terms of the proposal offered $2,500 to appellee as "the Plaintiff" contingent upon "the Plaintiff's" execution of a *762 release and settlement agreement in favor of appellant as "the Defendant." Nowhere in the proposal for settlement, the appellant argues, was there any reference to "the Defendant's" execution of a release and settlement agreement in favor of "the Plaintiff." Therefore, "the Defendant's" counterclaim was excluded from the proposal for settlement. Appellant further asserts that even if the proposal for settlement can be construed to resolve all claims including the counterclaim, a settlement cannot be enforced against appellant because the attorney for appellant did not have appellant's authority to settle the counterclaim.
We find it unnecessary to address the argument as to whether the proposal for settlement was sufficiently clear to settle all claims because we agree with the appellant's argument that there was unrebutted evidence that she had not authorized her attorney to settle her counterclaim and, therefore, the trial court could not compel enforcement of the settlement. For the purposes of enforcement of a settlement, as opposed to imposing sanctions for failing to accept a proposal for settlement, it is irrelevant that the offer and acceptance in the instant case were made pursuant to section 768.79, Florida Statutes (1999)[2] and Rule 1.442. The principles for enforcing a settlement are the same regardless of the form in which the offer and acceptance are conveyed.
The rules that must be followed in enforcing a settlement were set out in this court's opinion in Nehleber v. Anzalone, 345 So.2d 822 (Fla. 4th DCA 1977). Nehleber established the following rules:
(1) A party seeking judgment on the basis of compromise and settlement has the burden of establishing assent by the opposing party....
(2) The mere employment of an attorney does not of itself give the attorney the implied or apparent authority to compromise his client's cause of action....
(3) An exception to the general rule is a situation in which the attorney is confronted with an emergency which requires prompt action to protect his client's interest and consultation with the client is impossible....
(4) A client may give his attorney special or express authority to compromise or settle his cause of action, but such authority must be clear and unequivocal....
(5) An unauthorized compromise, executed by an attorney, unless subsequently ratified by his client, is of no effect and may be repudiated or ignored and treated as a nullity by the client....
Id. at 823 (citations omitted).
In Nehleber, the plaintiff's former attorney negotiated a settlement with the defendant's insurer, accepted a check, forged the plaintiffs endorsement, cashed the check and absconded with the money. Applying the aforementioned rules in enforcement of a settlement, our court held that the plaintiff's attorney did not have the authority to settle and, therefore, the insurers' affirmative defense of release was without effect. Although the facts in Nehleber involved plaintiff's counsel forging the plaintiff's endorsement on the settlement draft and absconding with the money, the principle is still the same. A *763 party attempting to enforce a settlement bears the burden of showing that the attorney proposing the settlement had the clear and unequivocal authority from his client to do so. See also Sheldon Greene & Assocs., Inc. v. Holstein, 629 So.2d 1009 (Fla. 4th DCA 1993); Cibula v. Ross, 597 So.2d 915 (Fla. 4th DCA 1992); Weitzman v. Bergman, 555 So.2d 448 (Fla. 4th DCA 1990); Carroll v. Carroll, 532 So.2d 1109 (Fla. 4th DCA 1988); Jorgensen v. Grand Union Co., 490 So.2d 214 (Fla. 4th DCA 1986); Vantage Broad. Co. v. WINT Radio, Inc., 476 So.2d 796 (Fla. 1st DCA 1985).
In the instant case, appellant's counsel asserted in his verified response to appellee's Motion to Enforce the Settlement that:
8. The undersigned hereby affirmatively states to this Court that his authority to settle this action related solely to the main claim. The main claim is a claim by Plaintiff McManus for jewelry allegedly held by the decedent. The Counterclaim seeks to require the Plaintiff to pay the estate taxes for a $500,000.00 insurance policy which her former fiancee [sic] took out for her benefit when they were still living together. The Estate never had any intention of offering any money to pay the taxes on such a windfall when Ms. McManus and the decedent had been broken up before decedent's death and the decedent had no legal or moral obligations to her.
Also filed with that response was the affidavit of appellant in which she denied giving her counsel the authority to settle the counterclaim.
The burden is on appellee to present clear and unequivocal evidence that appellant's counsel had the authority to settle. At the hearing on appellee's Motion to Enforce the Settlement, appellee presented no evidence to show that the appellant's attorney had the clear and unequivocal authority to settle all claims for $2,500. However, appellant presented unrebutted evidence that there was no such authority to settle the counterclaim. Therefore, we reverse the order enforcing the settlement and remand for further proceedings.
KLEIN and SHAHOOD, JJ., concur.
NOTES
[1] Appellant's attorney affirmatively stated in the verified response that his authority to settle related solely to the main claim made by appellee and not to the counterclaim.
[2] Section 768.79, Florida Statutes, was enacted for the purpose of encouraging settlements. The incentive for settlement is the imposition of sanctions in the nature of costs and attorney fees for failing to accept a proposal for settlement and subsequently suffering a judgment that is either 25% less than the offer made by a defendant or 25% more if made by a plaintiff.